**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| KRIS W. KOBACH, KANSAS<br>  SECRETARY OF STATE; | ) | |
| | ) | |
| KEN BENNETT, ARIZONA<br>  SECRETARY OF STATE; | ) | |
| | ) | |
| THE STATE OF KANSAS; | ) | |
| | ) | |
| THE STATE OF ARIZONA; | ) | |
| | ) | |
|       Plaintiffs, | ) | |
| vs. | ) | Case No. `13-4095-EFM-DJW` _____ |
| | ) | |
| THE UNITED STATES ELECTION | ) | Designation of Trial Location: |
|   ASSISTANCE COMMISSION; | ) | Topeka, Kansas |
| | ) | |
| ALICE MILLER, in her capacity as the | ) | |
|   ACTING EXECUTIVE DIRECTOR & | ) | |
|   CHIEF OPERATING OFFICER OF THE | ) | |
|   UNITED STATES ELECTION | ) | |
|   ASSISTANCE COMMISSION; | ) | |
| | ) | |
|       Defendants. | ) | |

**COMPLAINT**

COME NOW the above-named Plaintiffs, and for their Complaint against the United States Election Assistance Commission and Alice Miller, Acting Executive Director and Chief Operating Officer of the United States Elections Assistance Commission, hereby state and allege the following upon current information and belief:

*Introduction*

1.     This is an action seeking a writ of mandamus, pursuant to 28 U.S.C. § 1361 and the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* (hereinafter "the APA"), to order the United States Election Assistance Commission (hereinafter "the EAC") or its Acting Executive

1

Director Alice Miller (hereinafter "Miller") to make modifications to the Kansas- and Arizona-specific instructions of the mail voter registration application form (hereinafter "the Federal Form"), which is developed by the EAC in consultation with the chief election officers of the several States pursuant to the National Voter Registration Act, 42 U.S.C. § 1973gg *et seq.* (hereinafter "the NVRA"), or to otherwise permit the States of Kansas and Arizona to require voter registration applicants utilizing the Federal Form to submit proof-of-citizenship documentation in accordance with Kansas and Arizona law.  The current version of the Federal Form only requires a voter registration applicant to make a mere oath that the applicant is a United States citizen, while the State laws of Plaintiffs require that voter registration applicants utilizing the Federal Form also submit concrete documentation evidencing United States citizenship.

2.    The EAC and Miller have refused to make modifications to the State-specific instruction of the Federal Form as requested by Plaintiffs, even though the proposed modifications are necessary due to changes in the State laws of the Plaintiffs.  Pursuant to the NVRA, the EAC and Miller are under a nondiscretionary duty to make the proposed modifications to the Federal Form because the proposed modifications reflect the respective voter qualification and registration laws of Plaintiffs, and include State-specific instructions that enable Plaintiffs to obtain information Plaintiffs deem necessary to assess the eligibility of voter registration applicants and to enforce Plaintiffs' voter qualifications.  This action therefore seeks a writ of mandamus ordering the EAC and Miller to make the modifications to the State-specific instructions of the Federal Form as requested by Plaintiffs.

3.    This is also an action seeking declaratory judgment and injunctive relief, pursuant to 28 U.S.C. §§ 2201 and 2202, the APA, 5 U.S.C. § 500 *et seq.*, and the Tenth Amendment,

declaring that the Help America Vote Act of 2002 (hereinafter "HAVA"), 42 U.S.C. § 15301 *et seq.*, and the NVRA, 42 U.S.C. §§ 1973gg *et seq.*, are unconstitutional as applied by the EAC or as applied to Plaintiffs.  As sovereign States, Plaintiffs have the constitutional right, power, and privilege to establish voting qualifications, including voter registration requirements.  This power includes the power to obtain information Plaintiffs deem necessary to assess the eligibility of voter registration applicants and to enforce Plaintiffs' voter qualifications.

4.     Insofar as Plaintiffs have been precluded from obtaining modifications to their State-specific instruction on the Federal Form, while at the same time Plaintiffs are required under the NVRA to accept and use the Federal Form, HAVA and the NVRA are unconstitutional, as applied, in the following ways:

a.     The exercise of discretionary authority by the EAC, its officers, or its staff, in refusing to modify the State-specific instruction of the Federal Form as requested by Plaintiffs constitute unconstitutional Acts of Congress which are not authorized by one of the powers delegated to Congress in the Constitution, and are unconstitutional invasions of the provinces of State sovereignty in violation of the Tenth Amendment;

b.     To the extent the EAC's lack of quorum precludes the EAC from modifying the State-specific instructions of the Federal Form as requested by Plaintiffs, the lack of quorum unconstitutionally prevents Plaintiffs, in violation of the Tenth Amendment, from exercising their constitutional right, power, and privilege of establishing and enforcing voting qualifications, including voter registration requirements;

c.      Insofar as HAVA and the NVRA, as applied by the EAC or as applied to Plaintiffs, preclude Plaintiffs from requiring Federal Form applicants to provide concrete evidence of citizenship, HAVA and the NVRA constitute unconstitutional Congressional Acts establishing voting qualifications or voter registration requirements which are not supported by a power specifically conferred upon Congress by the Constitution, and which invade the province of State sovereignty reserved by the Tenth Amendment.

5.      The Supreme Court of the United States recently acknowledged the inviolable power of States to establish and enforce voting requirements, stating, "[s]ince the power to establish voting requirements is of little value without the power to enforce those requirements, … it would raise *serious constitutional doubts* if a federal statute precluded a State from obtaining the information necessary to enforce its voter qualifications." *Arizona v. Inter Tribal Council of Ariz., Inc.*, __ U.S. __, 133 S.Ct. 2247, 2258-59 (2013) (emphasis added).  The court further encouraged the present action by stating, "[s]hould the EAC's inaction persist, [the States] would have the opportunity to establish in a reviewing court that a mere oath will not suffice to effectuate [their] citizenship requirement and that the EAC is therefore under a nondiscretionary duty to include [the States'] concrete evidence requirement on the Federal Form." *Inter Tribal Council*, 133 S.Ct. at 2260.

*Parties*

6.      Plaintiff Kris W. Kobach (hereinafter "Secretary Kobach") is the duly-elected Secretary of State for the State of Kansas, which is a sovereign State in the United States of

America.   Pursuant to Kansas Statutes Annotated (hereinafter "K.S.A.") 25-2504, Secretary

Kobach is the Chief Election Officer of the State of Kansas as that phrase is used in the NVRA.

7.      Plaintiff Ken Bennett (hereinafter "Secretary Bennett") is the duly-elected

Secretary of State for the State of Arizona, which is a sovereign State in the United States of

America.   Pursuant to Arizona Revised Statutes (hereinafter "A.R.S.") § 16-142, Secretary

Bennett is the Chief Election Officer of the State of Arizona as that phrase is used in the NVRA.

8.      The State of Kansas is a sovereign State in the United States of America.

9.      The State of Arizona is a sovereign State in the United States of America.

10.     Defendant The United States Election Assistance Commission is an agency of the

United States, 42 U.S.C. §§ 15321 – 30, 42 U.S.C. § 1973gg-7, and is an "agency" as that term is

use in the APA, 5 U.S.C. § 551(1).   The EAC has an ongoing responsibility to develop the

Federal Form, in consultation with the chief election officers of the States, for the registration of

voters for elections for Federal office, 42 U.S.C. § 1973gg-7(a)(2).

11.     Defendant Alice Miller is the Acting Executive Director and Chief Operating

Officer of the EAC, and is named as a party in her official capacity.

### *Jurisdiction and Venue*

12.     This action is against the EAC, an agency of the United States, and against Miller,

the Acting Executive Director of the EAC and an officer of the United States.   This action arises

under the EAC's enabling statutes, 42 U.S.C. § 15321 *et seq.*, the NVRA, 42 U.S.C. § 1973gg *et*

*seq.*, the APA, 5 U.S.C. § 500 *et seq.*, and the Tenth Amendment to the United States

Constitution.   This action is in the nature of mandamus to compel an officer or employee of the

United States, or an agency thereof, to perform a duty owed to the Plaintiffs, as well as for

declaratory and injunctive relief.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346, 1361, 1651, 2201, and 2202.

13.      The relief requested herein is specifically authorized pursuant to 28 U.S.C. § 1651 (writs), 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 2202 (further relief), and 28 U.S.C. 2412 (costs and fees).

14.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(C) because Defendant Alice Miller is an officer or employee of the United States acting in her official capacity or under color of legal authority, Defendant EAC is an agency of the United States, Plaintiff Secretary Kobach and the State of Kansas are located in this judicial district, and no real property is involved in the action.

### *Factual Background*

15.      In 1993, the United States Congress passed and the President signed into law the NVRA.  See 42 U.S.C. § 1973gg *et seq.*  The various provisions of the NVRA were originally administered by the Federal Election Commission (hereinafter "the FEC").

16.      In 2002, Congress enacted HAVA, 42 U.S.C. § 15301 *et seq.*, and in so doing created the EAC, 42 U.S.C. § 15321 *et seq.*, an agency of the United States consisting of four Commissioners.  Pursuant to HAVA, Congress transferred from the FEC to the EAC the responsibility of administering the NVRA.  42 U.S.C. § 15532.

17.      Pursuant to HAVA, the President was required to appoint the original four members of the EAC Commission, by and with the advice of the Senate, within 120 days of the enactment of HAVA, and vacancies on the EAC Commission were required to be filled in the same manner in which the original appointments were made.  42 U.S.C. § 15323.

18.     The NVRA requires each State to permit prospective voters to register to vote in elections for Federal office by any of three methods: simultaneously with a driver's license application, in person, or by mail.  42 U.S.C. § 1973gg-2(a).

19.     Pursuant to the NVRA, the Federal Form shall include a statement that (a) specifies each eligibility requirement, including citizenship; (b) contains an attestation that the applicant meets each such requirement; and (c) requires the signature of the applicant, under penalty of perjury.  42 U.S.C. § 1973gg-7(b)(2).  The NVRA does not require applicants utilizing the Federal Form to provide concrete evidence of citizenship.

20.     A copy of the current Federal Form, accessed at http://www.eac.gov/assets/1/ Documents/Federal%20Voter%20Registration_1209_en9242012.pdf on August 16, 2013, is attached hereto as "Exhibit 1," and is incorporated herein by reference.

21.     The NVRA places upon the EAC the ongoing responsibility of developing the Federal Form, in consultation with the chief election officers of the States, for the registration of voters for elections for Federal office, 42 U.S.C. § 1973gg-7(a)(2), and in turn requires the States to accept and use the Federal Form for the registration of voters for elections for Federal office. 42 U.S.C. § 1973gg-4(a)(1).

22.     Under the NVRA, the EAC is under a nondiscretionary duty, at the request of the States, to modify the State-specific instructions of the Federal Form to reflect the respective voter qualification and registration laws of the States, and to include State-specific instructions that enable the States to obtain information the States deem necessary to assess the eligibility of voter registration applicants and to enforce the States' voter qualifications.  See 42 U.S.C. §§ 1973gg-7(a)(2) and 1973gg-7(b)(2); *Inter Tribal Council*, 133 S.Ct. at 2259.

23.     Pursuant to 42 U.S.C. § 15328, certain actions that the EAC is authorized to take under Chapter 146 of Title 42 of the United States Code, may be carried out only with the approval of at least three of its members.

24.     Pursuant to 42 U.S.C. § 15324(a), the EAC shall have an Executive Director and a General Counsel, each appointed by the Commission.

25.     There is established within the EAC the position of Chief Operating Officer, which officer serves under the Executive Director.

26.     There is established within the EAC the Division of Research, Programs and Policy (hereinafter "the RPP"), which serves under the Chief Operating Officer.

27.     The EAC has not had a quorum of commissioners since December 2010, and has not had any commissioners since December 2011.  The EAC has not had an Executive Director since December 2011, and has not had a General Counsel since May 2012.

28.     Plaintiffs state and allege on current information and belief that no Presidential nominations to the EAC are pending on the Executive Calendar of the United States Senate, and that the President has nominated only two individuals to serve as Commissioners on the EAC, and such nominations are pending in the Senate Committee of Rules and Administration, to-wit: PN538, Myrna Perez, of Texas, for a term expiring December 12, 2015 (received June 7, 2013), and PN537, Thomas Hicks, of Virginia, for a term expiring December 12, 2017 (received June 7, 2013), *vice* PN536, Thomas Hicks, of Virginia, for a term expiring December 12, 2013 (received June 7, 2013), which nominations will not establish a quorum of the EAC.

29.     On November 9, 2011, Thomas Wilkey, then-Executive Director of the EAC, sent a memorandum (hereinafter "the Wilkey Memorandum") to then-EAC Commissioners Donetta Davidson and Gineen Bresso.  The Wilkey Memorandum was issued due to the lack of quorum

8

of commissioners on the EAC, and purports to implement a procedure for reviewing and processing State requests for modifications to the Federal Form. A copy of the Wilkey Memorandum is attached hereto as "Exhibit 2," and is incorporated herein by reference.

30. Due to the lack of quorum of commissioners on the EAC, the Wilkey Memorandum purported to confer authority to the RPP to make modifications to the Federal Form at the request of States when the proposed modifications are required by a change in State law, including proposed modifications that clarify existing State law. The Wilkey Memorandum also stated: "Requests that raise issues of broad policy concern to more than one State will be deferred until the re-establishment of a quorum."

31. Plaintiffs state and allege on current information and belief that subsequent to the Wilkey Memorandum, the EAC and the RPP have approved requests from various States for modifications to State-specific instructions on the Federal Form on the basis of the authority conferred to the RPP by the Wilkey Memorandum. These approved requests include requests similar to those made by Plaintiffs as described herein.

32. Plaintiffs state and allege on current information and belief that Defendant Miller and the RPP, and other staff of the EAC, have conducted the business and duties of the EAC without a quorum of EAC Commissioners since at least December 2010.

<u>Kansas</u>

33. Since Kansas became a State in 1861, eligibility to vote in any election has been conditioned upon United States citizenship. Kan. Const. art. V, § 1.

34. Since Kansas became a State in 1861, the Kansas Constitution has provided that "[t]he legislature shall provide by law for proper proofs of the right to suffrage." Kan. Const. art. V, § 4.

35.     Since 1996, Kansas statutory law has allowed individuals to register to vote using the Federal Form in addition to the Kansas state registration form approved by the Kansas secretary of state.  See Section 7(a) of 1996 Kan. Sess. Laws Ch. 187, codified as K.S.A. 1996 Supp. 25-2309(a).

36.     Although both Kansas and federal law require that individuals be citizens of the United States in order to register and vote, non-citizens have improperly registered to vote in Kansas and have unlawfully voted in Kansas elections.

37.     In 2011, the Kansas legislature passed and the Kansas Governor signed into law HB 2067, the "Secure and Fair Elections Act," which amended various Kansas statutes concerning elections in the State of Kansas.  HB 2067 took effect on January 1, 2012.

38.     Section 8(l) of HB 2067, codified as K.S.A. 25-2309(l), provides: "The county election officer or secretary of state's office shall accept any completed application for registration, but an applicant shall not be registered until the applicant has provided satisfactory evidence of United States citizenship."  The statute enumerates 13 different documents that constitute satisfactory evidence of citizenship.

39.     Section 8(m) of HB 2067, codified as K.S.A. 25-2309(m), also allows an applicant to submit any other evidence that the applicant believed demonstrates the applicant's United States citizenship, and provides for a procedure by which such other evidence may be assessed and accepted.

40.     The proof of citizenship provisions of HB 2067 enable State election officials to assess the eligibility of voter registration applicants.

41.     Pursuant to Section 8(u) of HB 2067, codified as K.S.A. 25-2309(u), the proof of citizenship requirement of HB 2067 took effect on January 1, 2013.

42.     Pursuant to Section 8(n) of HB 2067, codified as K.S.A. 25-2309(n), persons who were properly registered to vote in Kansas prior to January 1, 2013, are not required to submit evidence of citizenship.

43.     On August 9, 2012, the Kansas Secretary of State's Office sent a letter to the EAC requesting that the Kansas-specific instructions for the Federal Form be modified by the EAC in three ways.  A copy of this letter is attached hereto as "Exhibit 3," and is incorporated herein by reference.

44.     The August 9, 2012, letter to the EAC requested that the Kansas-specific instruction for the Federal Form be modified to change the voter registration deadline from 15 days before the election to 21 days before the election.  This request was made due to a change in Kansas law.

45.     The August 9, 2012, letter to the EAC also requested that the Kansas-specific instruction for the Federal Form be modified by deleting the words "for mental incompetence" from the portion of the instruction stating that to register to vote in Kansas an applicant must not be excluded from voting by a court of competent jurisdiction.  This request was made to clarify existing Kansas law under K.S.A. 25-2316c(f).

46.     The August 9, 2012, letter to the EAC also requested that the Kansas-specific instructions for the Federal Form be modified by the EAC to reflect changes in Kansas law resulting from the passage of HB 2067.  This letter requested the following proposed instruction be added to the Kansas-specific instructions on the Federal Form: "An applicant must provide qualifying evidence of U.S. citizenship prior to the first election day after applying to register to vote."

47.    On October 11, 2012, Defendant Miller sent a letter to the Kansas Secretary of State's Office, which indicated that the requests for modification of the Kansas-specific instructions of the Federal Form relating to the voter registration deadline and requesting deletion of the words "for mental incompetence" had been approved subject to review by legal counsel.  A copy of this letter is attached hereto as "Exhibit 4," and is incorporated herein by reference.

48.    The October 11, 2012, letter further indicated that no action would be taken by the EAC on the request for modification of the Kansas-specific instruction of the Federal Form relating to proof of citizenship documentation.  The letter indicated that this request "appears to have broad policy impact and would require consideration and approval of the EAC Commissioners.  The authority of staff to modify the state instructions is limited to issues that do not have any policy impact."  The letter noted that the EAC was without any Commissioners at the time, and therefore no action be taken by the EAC regarding this request.

49.    On June 18, 2013, Secretary Kobach sent a letter to the EAC renewing Kansas's request that the Kansas-specific instructions be modified to include an instruction reflecting Kansas's law requiring that proof of citizenship documentation be submitted with voter registration applications.  This renewed request was made in light of the decision of the United States Supreme Court in *Inter Tribal Council*, 133 S.Ct. at 2258-60.  A copy of this letter is attached hereto as "Exhibit 5," and is incorporated herein by reference.

50.    On July 31, 2013, Defendant Miller sent a letter to Secretary Kobach in which Miller again informed Secretary Kobach that the EAC could not process Kansas' request to modify in the Federal Form to reflect Kansas's proof of citizenship requirement due to a lack of a quorum on the Commission.  In this letter, Miller stated that staff of the EAC is authorized to

process State requests to modify State-specific instructions on the Federal Form, but that according to procedures then in place EAC staff must defer determination on Kansas's request until the EAC has a quorum because the request raises "issues of broad policy concern to more than one state."  A copy of this letter is attached hereto as "Exhibit 6," and is incorporated herein by reference.

51.    The July 31, 2013, letter cited the Wilkey Memorandum as authority for the ability of EAC staff to process State requests for modifications to the Federal Form as well as for the policy to defer requests raising "issues of broad policy concern to more than one state" until the EAC has a quorum.

52.    The July 31, 2013, letter from the EAC also suggested that the June 18, 2013, letter from the Kansas Secretary of State's Office indicated that Kansas would not accept and use the Federal Form without proper citizenship documentation.

53.    On August 2, 2013, Secretary Kobach sent a letter to the EAC clarifying to the EAC that Kansas will accept and use the Federal From submitted without proof of citizenship documentation to register voters for elections for Federal office until the EAC adds the requested Kansas-specific instruction to the Federal Form or until Kansas is otherwise relieved of that duty by a court of competent jurisdiction.  This letter further clarified that once the Kansas-specific instruction was added, the Federal Form would be accepted for registering voters for both Federal and State elections.  A copy of this letter is attached hereto as "Exhibit 7," and is incorporated herein by reference.

54.    The August 2, 2013, letter also made the following modification to the proposed Kansas-specific instruction to remove a possible ambiguity in the language of the proposed

instruction: "To cast a regular ballot an applicant must provide evidence of U.S. citizenship prior to the ~~first~~ election day ~~after applying to register to vote~~."

55.     On August 6, 2013, Defendant Miller sent a letter to Secretary Kobach in which Miller again informed Secretary Kobach that the EAC could not process Kansas' request to modify in the Federal Form to reflect the Kansas proof of citizenship requirement due to a lack of a quorum on the Commission.  This letter again stated that according to procedures then in place EAC staff must defer determination on Kansas's request until the EAC has a quorum because the request raises "issues of broad policy concern to more than one state."  A copy of this letter is attached hereto as "Exhibit 8," and is incorporated herein by reference.

56.     The August 6, 2013, letter again cited the Wilkey Memorandum as authority for the ability of EAC staff to process State requests for modifications to the Federal Form as well as for the policy to defer requests raising "issues of broad policy concern to more than one state" until the EAC has a quorum.

57.     The August 6, 2013, letter from the EAC to the Kansas Secretary of State's Office constitutes final agency action.

<u>Arizona</u>

58.     Since Arizona became a State in 1912, eligibility to vote in any election has been conditioned upon United States citizenship.  Ariz. Const. art. VII, § 2; A.R.S. § 16-101(A)(1).

59.     The Arizona Constitution provides that, "[t]here shall be enacted registration and other laws to secure the purity of elections and guard against abuses of the elective franchise." Ariz. Const. art. VII, § 12.

60.     Although both Arizona and federal law require that individuals be citizens of the United States in order to register and vote, non-citizens have improperly registered to vote in Arizona and have unlawfully voted in Arizona elections.

61.     In 2004, Arizona voters passed Proposition 200, a citizens' initiative, declaring that "illegal immigrants have been given a safe haven in this state with the aid of identification cards that are issued without verifying immigration status, and that this conduct… demeans the value of citizenship."   The initiative was designed in part "to combat voter fraud by requiring voters to present proof of citizenship when they register to vote and to present identification when they vote on election day."  *Purcell v. Gonzalez*, 549 U.S. 1, 2, 127 S.Ct. 5 (2006).  A copy of Proposition 200 is attached hereto as "Exhibit 9," and is incorporated herein by reference.

62.     One of Proposition 200's provisions, codified as A.R.S. § 16-166, required prospective voters to provide satisfactory evidence of United States citizenship in order to register to vote.

63.     Proposition 200, codified as A.R.S. § 16-166(F), permits a variety of documents and identification numbers to be used as evidence of citizenship.

64.     The proof-of-citizenship provisions of Proposition 200 enable State election officials to assess the eligibility of voter registration applicants.

65.     Following approval of Proposition 200 by Arizona voters, the Arizona Attorney General submitted Proposition 200 to the U.S. Department of Justice for preclearance under Section 5 of the Voting Rights Act.  In that submission, Arizona specifically stated that the measure would "require applicants registering to vote to provide evidence of United States citizenship with the application."

66.     The Department of Justice precleared Proposition 200 on January 24, 2005.

67.     On December 12, 2005, Arizona, through the Secretary of State's Office, requested the EAC to apply Arizona state policy derived from Proposition 200 to the state-specific instructions for the Federal Form.

68.     On March 6, 2006, Thomas Wilkey, then-Executive Director of the EAC, wrote to then-Arizona Secretary of State Jan Brewer, stating that Federal law set forth in the NVRA and HAVA preempted Arizona's statutory requirement that applicants submit proof of citizenship with their registration forms.  As a result, the EAC refused to include a proof of citizenship requirement in the Arizona-specific instructions for the Federal Form.  Plaintiffs state and allege on current information and belief that Mr. Wilkey made this decision unilaterally and not with the agreement of a minimum of three Commissioners.  A copy of Mr. Wilkey's March 6, 2006, letter is attached hereto as "Exhibit 10," and is incorporated herein by reference.

69.     On March 13, 2006, then-Secretary Brewer wrote to Paul DeGregorio, then-Chairman of the EAC, to request reconsideration of Mr. Wilkey's decision.  A copy of this letter is attached hereto as "Exhibit 11," and is incorporated herein by reference.

70.     On May 9, 2006, a group of individual Arizona residents filed suit seeking to enjoin the voting provisions of Proposition 200 in the U.S. District Court for the District of Arizona.  *Gonzalez v. Arizona,* D. Ariz. Cause No. CV 06-1268-PHX-ROS.  A separate complaint was filed by the Inter Tribal Council of Arizona, Inc. (hereinafter "ITCA").  These two cases were later consolidated (hereinafter "*Gonzalez/ITCA*").

71.     On June 19, 2006, the district court issued an opinion and order in *Gonzalez/ITCA*, denying the plaintiffs' request for a temporary restraining order preventing Arizona officials from enforcing Proposition 200.  The opinion and order provided:

> Determining whether an individual is a United States citizen is of paramount importance when determining his or her eligibility to vote.  In

fact, the NVRA repeatedly mentions that its purpose and goal is to increase registration of "eligible citizens." 42 U.S.C. § 1973gg(b)(1)-(2). Providing proof of citizenship undoubtedly assists Arizona in assessing the eligibility of applicants. Arizona's proof of citizenship requirement does not conflict with the plain language of the NVRA. (Dkt. 68 at 9.)

72.     On June 20, 2006, then-Secretary Brewer sent a letter to the EAC renewing Arizona's request that the EAC approve the Arizona-specific instructions giving effect to Proposition 200's proof-of-citizenship requirement. A copy of this letter is attached hereto as "Exhibit 12," and is incorporated herein by reference.

73.     Then-EAC Chair DeGregorio, in response to then-Secretary Brewer's June 20, 2006 letter and the district court order, submitted a Tally Vote to change the state-specific instructions. The Tally vote failed on a 2 to 2 vote, which vote was accompanied by position statements by EAC Chairman Paul DeGregorio and Vice Chairman Ray Martinez III. A copy of the Tally Vote, including the position statements, is attached hereto as "Exhibit 13," and is incorporated herein by reference.

74.     The *Gonzalez/ITCA* consolidated case proceeded through the courts and went twice through the Ninth Circuit and the U.S. Supreme Court. On June 17, 2013, the Supreme Court issued its Opinion in *Inter Tribal Council*, 133 S.Ct. 2247. The court held that Arizona must accept and use the Federal Form to register voters for elections for federal office, but that nothing precluded Arizona from renewing its request that the EAC modify the Federal Form to include the Arizona-specific instruction and challenging the EAC's rejection of that request under the APA. *Inter Tribal Council*, 133 S.Ct. at 2259-60.

75.     On June 19, 2013, Secretary Bennett wrote to Defendant Miller to renew Arizona's request that the EAC modify the Federal Form to include the Arizona-specific instructions regarding Arizona's proof of citizenship requirement as codified in A.R.S. § 16-166. A copy of this letter is attached hereto as "Exhibit 14," and is incorporated herein by reference.

76.     On July 22, 2013, counsel for ITCA submitted a letter to Defendant Miller urging the EAC to reject Arizona's request.  A copy of that letter is attached hereto as "Exhibit 15," and is incorporated herein by reference.

77.     On July 26, 2013, Arizona Attorney General Thomas C. Horne wrote to Defendant Miller to join in Secretary Bennett's request that the EAC modify the Federal Form to include Arizona's proof-of-citizenship requirement in the Arizona-specific instructions of the Federal Form.  Attorney General Horne noted that the EAC had recently approved the State of Louisiana's request for state-specific instructions that required applicants that do not have a Louisiana driver's license, a Louisiana special identification card, or a social security number to attached additional documentation to the Federal Form pursuant to Louisiana statutes.  Attorney General Horne further encouraged the EAC to treat Arizona fairly in light of its approval of Louisiana's request.  A copy of Attorney General Horne's July 26, 2013, letter is attached hereto as "Exhibit 16," and is incorporated herein by reference.

78.     On August 13, 2013, Defendant Miller sent a letter to Secretary Bennett in which she informed Secretary Bennett that the EAC could not process Arizona's request to modify the Federal Form to reflect Arizona's proof of citizenship requirement due to a lack of a quorum on the Commission.  The letter cited the Wilkey Memorandum as authority for the ability of EAC staff to process State requests for modifications to the Federal Form as well as for the policy to defer requests raising "issues of broad policy concern to more than once state" until the EAC has a quorum.  A copy of the August 13, 2013, letter is attached hereto as "Exhibit 17," and is incorporated herein by reference.

79.     The August 13, 2013, letter from the EAC to the Arizona Secretary of State's Office constitutes final agency action.

*Causes of Action*

<u>Cause I: Agency Action Unlawfully Withheld or Unreasonably Delayed</u>

80.     Plaintiffs hereby incorporate all of the foregoing allegations into the allegations supporting Cause I.

81.     As sovereign States in the United States of America, Plaintiffs have the constitutional right, power, and privilege to establish voting qualifications, including voter registration requirements.  *See* U.S. Const. article I, § 2, cl. 1; U.S. Const. amend. X and XVII. This power includes the power to obtain information Plaintiffs deem necessary to assess the eligibility of voter registration applicants and to enforce Plaintiffs' voter qualifications.  *Inter Tribal Council*, 133 S.Ct. at 2258-59; 42 U.S.C. § 1973gg(b)(2).

82.     A mere oath without concrete evidence of citizenship, as allowed for by the current version of the Federal Form, does not suffice to effectuate the State laws of Plaintiffs or enable Plaintiffs to obtain information Plaintiffs deem necessary to assess the eligibility of voter registration applicants and to enforce their voter qualifications.  The EAC is therefore under a nondiscretionary duty to include Plaintiffs' concrete evidence requirements on the Federal Form. Justice Scalia, who authored the Opinion of the Court in *Inter Tribal Council*, specifically noted during oral argument that a mere oath is virtually meaningless and does not enable the States to ensure that a voter registration applicant is actually qualified to vote: "The proof [the EAC] requires is simply the statement, 'I'm a citizen.'  That is proof?… That is not proof at all… Under oath is not proof at all.  It's just a statement."  Transcript of oral argument, p. 44.

83.     Pursuant to the NVRA, Plaintiffs may request that the EAC alter the Federal Form to reflect Plaintiffs' voter qualification and registration laws and to include information the Plaintiffs deem necessary to enable Plaintiffs to assess the eligibility of voter registration

applicants and to enforce Plaintiffs' voter qualifications.  42 U.S.C. § 1973gg-7(a)(2); *Inter Tribal Council*, 133 S.Ct. at 2259.

84.     Pursuant to the NVRA, the EAC is under a nondiscretionary duty, at the request of Plaintiffs, to modify the State-specific instructions of the Federal Form to reflect the respective voter qualification and registration laws of the Plaintiff States, and to include State-specific instructions that enable Plaintiffs to obtain information Plaintiffs deem necessary to assess the eligibility of voter registration applicants and to enforce Plaintiffs' voter qualifications.  See 42 U.S.C. §§ 1973gg-7(a)(2) and 1973gg-7(b)(2); *Inter Tribal Council*, 133 S.Ct. at 2259.

85.     The APA provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).

86.     The APA provides that this Court "shall compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

87.     Pursuant to the APA, "agency action" includes the whole or a part of an agency rule, order, relief, or the equivalent or denial thereof, and includes an agency's failure to act.  5 U.S.C. § 551(13).

88.     The letters from the EAC to Plaintiffs, denying Plaintiffs requests to modify the Federal Form, constitute final agency actions.

89.     To the extent that the NVRA or HAVA provide that the EAC's lack of quorum precludes the EAC from modifying the State-specific instructions of the Federal Form as requested by Plaintiffs, while at the same time requiring Plaintiffs to accept and use the Federal Form to register individuals to vote, the NVRA or HAVA result in an unconstitutional invasion

of the province of State sovereignty in violation of Article I, § 2 of the Constitution, the Tenth Amendment, and the Seventeenth Amendment.

90.     The EAC's and the RPP's failure to modify the State-specific instructions on the Federal Form as requested by Plaintiffs constitutes agency action unlawfully withheld or unreasonably delayed under the APA, 5 U.S.C. § 706(1).

Cause II:  Agency Action, Findings, and Conclusions
Contrary to Constitutional Right, Power, Privilege, or Immunity

91.     Plaintiffs hereby incorporate all of the foregoing allegations into the allegations supporting Cause II.

92.     The APA provides that this Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be… contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).

93.     Pursuant to the APA, "agency action" includes the whole or a part of an agency rule, order, relief, or the equivalent or denial thereof, and includes an agency's failure to act.  5 U.S.C. § 551(13).

94.     The letters from the EAC to Plaintiffs, denying Plaintiffs requests to modify the Federal Form, constitute final agency actions.

95.     As sovereign States in the United States of America, Plaintiffs have the constitutional right, power, and privilege of establishing voting qualifications, including voter registration requirements.  *See* U.S. Const. article I, § 2, cl. 1; U.S. Const. amend. X and XVII.

96.     The constitutional rights, powers, and privileges of establishing voter qualifications, including voter registration requirements, are incidents of State sovereignty protected by Article I, § 2 of the Constitution, the Tenth Amendment, and the Seventeenth Amendment.   This power includes the power to obtain information the States deem necessary to

assess the eligibility of voter registration applicants and to enforce their voter qualifications. *Inter Tribal Council*, 133 S.Ct. at 2258-59.

97.     A mere oath without concrete evidence of citizenship, as allowed for by the current version of the Federal Form, does not suffice to effectuate the State laws of Plaintiffs or enable Plaintiffs to obtain information Plaintiffs deem necessary to assess the eligibility of voter registration applicants and to enforce their voter qualifications.  Justice Scalia, who authored the Opinion of the Court in *Inter Tribal Council*, specifically noted during oral argument that a mere oath is virtually meaningless and does not enable the States to ensure that a voter registration applicant is actually qualified to vote: "The proof [the EAC] requires is simply the statement, 'I'm a citizen.'  That is proof?… That is not proof at all… Under oath is not proof at all.  It's just a statement."  Transcript of oral argument, p. 44.

98.     Under the NVRA and the Tenth Amendment, the EAC is under a nondiscretionary duty, at the request of Plaintiffs, to modify the State-specific instructions of the Federal Form to reflect the respective voter qualification and registration laws of Plaintiffs, and to include State-specific instructions that enable Plaintiffs to obtain information Plaintiffs deem necessary to assess the eligibility of voter registration applicants and to enforce Plaintiffs' voter qualifications.  See 42 U.S.C. §§ 1973gg-7(a)(2) and 1973gg-7(b)(2); *Inter Tribal Council*, 133 S.Ct. at 2259.

99.     The EAC's and the RPP's failure to modify the State-specific instructions on the Federal Form as requested by Plaintiffs constitutes agency action contrary to the constitutional rights, power, and privileges of Plaintiffs, under the Tenth Amendment, to establish voter qualifications, including voter registration requirements, to obtain information Plaintiffs deem necessary to assess the eligibility of voter registration applicants and to enforce their voter

qualifications, and otherwise infringes upon incidents of State sovereignty of the Plaintiff States, under the APA, 5 U.S.C. § 706(2)(B).

Cause III: Agency Action, Findings, and Conclusions that are
Arbitrary, Capricious, an Abuse of Discretion, or Otherwise Not in Accordance with Law

100.    Plaintiffs hereby incorporate all of the foregoing allegations into the allegations supporting Cause III.

101.    The APA provides that this Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be… arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

102.    Pursuant to the APA, "agency action" includes the whole or a part of an agency rule, order, relief, or the equivalent or denial thereof, and includes an agency's failure to act.  5 U.S.C. § 551(13).

103.    The letters from the EAC to Plaintiffs, denying Plaintiffs requests to modify the Federal Form, constitute final agency actions.

104.    The agency action taken by the EAC pursuant to the Wilkey Memorandum vested nondiscretionary authority in the RPP to make modifications to the Federal Form at the request of States when the proposed modifications are required by a change in State law, including proposed modifications that clarify existing State law.

105.    To the extent that the Wilkey Memorandum vested discretionary authority in the RPP to refuse to make modifications to the Federal Form at the Plaintiffs' request, the Wilkey Memorandum constitutes final agency action that was arbitrary, capricious, an abuse of discretion, and was otherwise made not in accordance with law.

106.    By their requests to the EAC, Plaintiffs sought to modify their respective State-specific instructions on the Federal Form to reflect the State law of Plaintiffs, and to include

instructions that enable Plaintiffs to obtain information Plaintiffs deem necessary to assess the eligibility of voter registration applicants and to enforce Plaintiffs' voter qualifications.  Because these requests concern only Plaintiffs' State-specific instructions, these requests do not "raise issues of broad policy concern to more than one State."

107.    In 2012, the EAC approved a modification to the Louisiana-specific instructions of the Federal Form similar to the proposed instructions of Plaintiffs, and the EAC's failure to include Plaintiffs' proposed State-specific instruction therefore constitutes agency action that is arbitrary, capricious, and an abuse of discretion.  In *Inter Tribal Council*, the United States Supreme Court specifically noted that it would be arbitrary to refuse to include Arizona's proposed instruction when the EAC has accepted a similar instruction requested by Louisiana. *Inter Tribal Council*, 133 S.Ct. at 2260.

108.    The EAC's and the RPP's failure to modify the State-specific instructions on the Federal Form as requested by Plaintiffs constitutes agency action that was arbitrary, capricious, an abuse of discretion, and was otherwise made not in accordance with law under the APA, 5 U.S.C. § 706(2)(A).

### Cause IV: Agency Action, Findings, and Conclusions that were in Excess of Statutory Jurisdiction, Authority, or Limitations, or Short of Statutory Right

109.    Plaintiffs hereby incorporate all of the foregoing allegations into the allegations supporting Cause IV.

110.    The APA provides that this Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be… in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).

111.    Pursuant to the NVRA, the EAC is under a nondiscretionary duty to modify the State-specific instructions of the Federal Form to reflect the respective voter qualification and

registration laws of Plaintiffs, and to include State-specific instructions that enable Plaintiffs to obtain information Plaintiffs deem necessary to assess the eligibility of voter registration applicants and to enforce Plaintiffs' voter qualifications.  See 42 U.S.C. §§ 1973gg-7(a)(2) and 1973gg-7(b)(2);  *Inter Tribal Council*, 133 S.Ct. at 2259.

112.    Pursuant to the NVRA, the EAC and the RPP do not have the authority or right to decline Plaintiffs' requests to include State-specific instructions on the Federal Form that reflect the respective voter qualification and registration laws of Plaintiffs, or that enable Plaintiffs to obtain information Plaintiffs deem necessary to assess the eligibility of voter registration applicants and to enforce their voter qualifications.

113.    To the extent the EAC interprets its own authority under the NVRA as sufficient to effectively prevent a State from requiring voter registration applicants to provide concrete evidence of citizenship, such an interpretation assumes that Congress has delegated authority to the EAC that Congress itself does not possess.  Congress may not delegate power to an administrative agency that Congress itself does not have.  Thus, such an interpretation would be in excess of statutory authority.

114.    The EAC's and the RPP's failure to modify the State-specific instructions on the Federal Form as requested by Plaintiffs constitutes agency action that was in excess of statutory jurisdiction, authority, limitations, or short of statutory right under the APA, 5 U.S.C. § 706(2)(C).

## Cause V:  The Tenth Amendment

115.    Plaintiffs hereby incorporate all of the foregoing allegations into the allegations supporting Cause V.

116.    The Constitution established a system of dual sovereignty in which the States surrendered many of their powers to the Federal Government, but retained a residual and inviolable sovereignty.

117.    Residual State sovereignty is implicit in the Constitution's conferral upon Congress of not all governmental powers, but only discrete, enumerated ones, which implication was rendered express by the Tenth Amendment's assertion that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

118.    The Federal Government is a government of enumerated powers with judicially enforceable limits, which means that Congress has no power to act unless the Constitution authorizes it to do so.

119.    An act of Congress not supported by a power specifically conferred upon it by the Constitution is unconstitutional and is an invasion of the province of State sovereignty in violation of the Tenth Amendment.  Further, an agency created by Congress cannot exercise powers that Congress itself does not possess.

120.    As sovereign States in the United States of America, Plaintiffs have the constitutional right, power, and privilege to establish voting qualifications, including voter registration requirements.  *See* U.S. Const. article I, § 2, cl. 1; U.S. Const. amend. X and XVII. This power includes the power to obtain information Plaintiffs deem necessary to assess the eligibility of voter registration applicants and to enforce their voter qualifications.  *Inter Tribal Council*, 133 S.Ct. at 2258-59; 42 U.S.C. § 1973gg(b)(2).

121.    No enumerated power in Article I, or anywhere else in the Constitution, confers upon Congress the power to establish voting qualifications or voter registration requirements, or

the power to prohibit, limit, or hinder the power of the States to establish voter qualifications or voter registration requirements. *Inter Tribal Council*, 133 S.Ct. at 2258.

122. No enumerated power in Article I, or anywhere else in the Constitution, confers upon Congress the power to prohibit, limit, or hinder the power of the States to obtain information the States deem necessary to assess the eligibility of voter registration applicants or to enforce their voter qualifications. *Inter Tribal Council*, 133 S.Ct. at 2258-59.

123. Pursuant to the NVRA, the EAC is under a nondiscretionary duty to modify the State-specific instructions of the Federal Form to reflect the respective voter qualification and registration laws of Plaintiffs, and to include State-specific instructions that enable Plaintiffs to obtain information Plaintiffs deem necessary to assess the eligibility of voter registration applicants and to enforce Plaintiffs' voter qualifications. See 42 U.S.C. §§ 1973gg-7(a)(2) and 1973gg-7(b)(2); *Inter Tribal Council*, 133 S.Ct. at 2259.

124. To the extent that the NVRA vests discretionary authority with the EAC to refuse to modify the State-specific instructions of the Federal Form to reflect the respective voter qualification and registration laws of Plaintiffs, while at the same time requiring that Plaintiffs accept and use the Federal Form to register individuals to vote, the NVRA is an unconstitutional Act of Congress, as applied by the EAC or as applied to Plaintiffs, which is not authorized by one of the powers delegated to Congress in the Constitution, and is an unconstitutional invasion of the province of State sovereignty in violation of Article I, § 2 of the Constitution, the Tenth Amendment, and the Seventeenth Amendment.

125. To the extent that the NVRA vests discretionary authority with the EAC to refuse to include State-specific instructions on the Federal Form that Plaintiffs deem necessary to enable Plaintiffs to assess the eligibility of voter registration applicants and to enforce their voter

qualifications, while at the same time requiring that Plaintiffs accept and use the Federal Form to register individuals to vote, the NVRA is an unconstitutional Act of Congress, as applied by the EAC or as applied to Plaintiffs, which is not authorized by one of the powers delegated to Congress in the Constitution, and is an unconstitutional invasion of the province of State sovereignty in violation of Article I, § 2 of the Constitution, the Tenth Amendment, and the Seventeenth Amendment.

126.    To the extent that HAVA or the NVRA provide that the EAC's lack of quorum precludes the EAC from modifying the State-specific instructions of the Federal Form as requested by Plaintiffs, while at the same time requiring Plaintiffs to accept and use the Federal Form to register individuals to vote, the NVRA or HAVA result in an unconstitutional invasion of the province of State sovereignty, as applied by the EAC or as applied to Plaintiffs, in violation of Article I, § 2 of the Constitution, the Tenth Amendment, and the Seventeenth Amendment.

127.    As applied by the EAC or as applied to Plaintiffs, the NVRA effectively compels Plaintiffs to choose between two options, neither of which Congress has the constitutional authority to enact.  Either: (1) Plaintiffs must abandon their proof-of-citizenship requirements for Federal Form applicants and allow such applicants to register to vote for federal elections but not state elections; or (2) Plaintiffs must abandon their proof-of-citizenship requirements altogether, and allow applicants using any registration form to register to vote for both federal and state elections.

128.    Because "[a] choice between two unconstitutionally coercive regulatory techniques is no choice at all," *New York v. United States*, 505 U.S. 144, 176, 112 S.Ct. 2408, 2428 (1992), the EAC has invaded the province of State sovereignty and has unconstitutionally

commandeered Plaintiffs into enacting a federal voter eligibility and registration policy which Congress has not authority to enact in the first place.

### *Prayer for Relief*

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Find, hold unlawful, and set aside the EAC's and the RPP's findings and decisions, or alternatively, the EAC's and the RPP's failure to modify State-specific instructions of the Federal Form as requested by Plaintiffs as agency action unlawfully withheld or unreasonably delayed; as agency action that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; as agency action contrary to constitutional right, power, privilege, or immunity; and as agency action in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

B.     Issue a writ of mandamus ordering the EAC to modify the State-specific instructions of the Federal Form as requested by the respective Plaintiffs;

C.     Declare that, to the extent that the NVRA vests discretionary authority with the EAC to refuse to modify the State-specific instructions of the Federal Form to reflect the respective voter qualification and registration laws of the States, while at the same time requiring that the States accept and use the Federal Form to register individuals to vote, the NVRA is unconstitutional as applied by the EAC or as applied to Plaintiffs;

D.     Declare that, to the extent that the NVRA vests discretionary authority with the EAC to refuse to include State-specific instructions on the Federal Form that the States deem necessary to enable the States to assess the eligibility of voter registration applicants and to enforce their voter qualifications, while at the same time requiring that the States accept and use

the Federal Form to register individuals to vote, the NVRA is unconstitutional as applied by the EAC or as applied to Plaintiffs;

E.      Declare that the Wilkey Memorandum is an unlawful regulation promulgated without observance of the requirements of the APA;

F.      Declare that, to the extent that the Wilkey Memorandum vested discretionary authority to the RPP to refuse to make modifications to the Federal Form at the request of States, the Wilkey Memorandum constitutes agency action that was arbitrary, capricious, an abuse of discretion, and was otherwise made not in accordance with law;

G.      Declare that, to the extent that HAVA or the NVRA provide that the EAC's lack of quorum precludes the EAC from modifying the State-specific instructions of the Federal Form as requested by the States, while at the same time requiring that the States accept and use the Federal Form to register individuals to vote, HAVA and the NVRA result in an unconstitutional invasion of the province of State sovereignty, as applied by the EAC or as applied to Plaintiffs, in violation of Article I, § 2 of the Constitution, the Tenth Amendment, and the Seventeenth Amendment;

H.      Enjoin the EAC and any employee or officer acting on the EAC's behalf from exercising discretion to refuse, at the request of Plaintiffs, to modify the State-specific instructions of the Federal Form to reflect the respective voter qualification and registration laws of the States;

I.      Enjoin the EAC and any employee or officer acting on the EAC's behalf from exercising discretion to refuse, at the request of Plaintiffs, to include State-specific instructions on the Federal Form that Plaintiffs deem necessary to assess the eligibility of voter registration applicants and to enforce their voter qualifications.

       J.       Award Plaintiffs their costs and grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

s/ Thomas E. Knutzen
Thomas E. Knutzen, Kansas Bar No. 24471
Kris W. Kobach, Kansas Bar No. 17280
Eric K. Rucker, Kansas Bar No. 11109
Regina M. Goff, Kansas Bar No. 25804
KANSAS SECRETARY OF STATE'S OFFICE
Memorial Hall, 1st Floor
120 S.W. 10th Avenue
Topeka, KS  66612
Tel. (785) 296-4564
Fax. (785) 368-8032
tom.knutzen@sos.ks.gov
***Attorneys for Kris W. Kobach, Kansas***
***Secretary of State, and for***
***The State of Kansas***

Thomas C. Horne, Arizona Bar No. 002951
(*pro hoc vice* applic. pending)
Michele L. Forney, Arizona Bar No. 019775
(*pro hoc vice* applic. pending)
ARIZONA ATTORNEY GENERAL'S OFFICE
1275 W. Washington
Phoenix, AZ  85007
Tel. (602) 542-7826
Fax. (602) 542-8308
michele.forney@azag.gov
***Attorneys for Ken Bennett, Arizona***
***Secretary of State, and for***
***The State of Arizona***

Dated: August 21, 2013