# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

KRIS W. KOBACH, *et al.*,

    *Plaintiffs*,

vs.

THE UNITED STATES ELECTION
ASSISTANCE COMMISSION, *et al.*,

    *Defendants*.

Case No. 13-cv-4095-EFM-TJJ

**MEMORANDUM AND ORDER**

After this Court ordered the United States Election Assistance Commission (EAC) to add language requested by Arizona and Kansas to the state-specific instructions on the federal mail voter registration form, the EAC and four intervenor groups filed five motions for a stay pending appeal. (Docs. 161, 163, 164, 165, 166). Because the EAC and intervenors have not demonstrated that they would suffer irreparable harm, the Court declines to issue a stay. Additionally, the Court finds that any harm to the moving parties does not outweigh the harm to the states, that the public interest does not support a stay, and that the movants have not demonstrated a strong likelihood of success on appeal. Therefore, the motions are denied.

## I. Factual and Procedural Background

On March 19, 2014, this Court ordered the EAC to add language to the state-specific instructions of the federal mail voter registration form to reflect the state laws of Arizona and

Kansas that require proof of citizenship to register to vote.[1] The EAC and four intervenor groups have filed a notice of appeal.[2] The appeal has been docketed with the United States Court of Appeals for the Tenth Circuit.[3] The EAC and each of the intervenor groups have filed separate motions to stay this Court's order pending appeal.

## II. Legal Standard

Rule 62(c) of the Federal Rules of Civil Procedure permits a district court to modify an injunction while an appeal is pending.[4] The purpose of a stay is to preserve the status quo pending the outcome of an appeal.[5] Because a stay intrudes into ordinary judicial review, it is generally not a matter of right even if irreparable injury might otherwise result.[6] A stay of an equitable order is a unique device that is rarely granted.[7] And the grant of a stay pending appeal is entirely discretionary.[8] A party must move first in the district court for a stay pending appeal before making a similar motion in the court of appeals.[9]

---

[1] For more background information, see Doc. 157; *Kobach v. U.S. Election Assistance Comm'n*, 2014 WL 1094957 (D. Kan. 2014).

[2] The four groups are headed by the Inter Tribal Council of Arizona, Project Vote, the League of Women Voters, and Valle del Sol.

[3] Doc. 171 (assigning appellate docket number 14-3072).

[4] FED. R. CIV. P. 62(c).

[5] *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996).

[6] *Nken v. Holder*, 556 U.S. 418, 427 (2009).

[7] *Fowler by Fowler v. Unified Sch. Dist. No. 259*, 907 F. Supp 348, 349 (D. Kan. 1995).

[8] *Law v. NCAA*, 134 F.3d 1025, 1030 (10th Cir. 1998).

[9] FED. R. APP. P. 8(a).

The party requesting a stay bears the burden of showing that the circumstances justify a stay.[10] A court considering a motion to stay must balance the competing interests.[11] These competing interests are articulated in a four-factor test, similar to the test for issuing a preliminary injunction:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.[12]

If the moving party can establish that the other three factors tip decidedly in its favor, the "likelihood of success" requirement is somewhat relaxed.[13] Under these circumstances, likelihood of success is demonstrated when the moving party has raised "questions going to the merits so serious, substantial, difficult and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."[14]

### III. Analysis

The EAC asserts that the balance of harm tips sharply in its favor such that it is appropriate to preserve the status quo until the Tenth Circuit rules on the appeal. On the other hand, the states argue that the balance of the three harm factors weighs in their favor. All parties agree that the probability of success factor carries less weight if the moving parties can

---

[10] *Id*. at 433-34.

[11] *Span-Eng Assocs. v. Weidner*, 771 F.2d 464, 467 (10th Cir. 1985).

[12] *Nken*, 556 U.S. at 434.

[13] *F.T.C. v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003).

[14] *Id*. at 852-53 (internal quotations omitted).

demonstrate that the other three factors tip decidedly in their favor. As a result, this Court first addresses the three harm factors.

**A. Harm to the EAC and the intervenors**

The primary harm asserted by the EAC is that this Court's order renders the EAC unable to carry out what it considers its statutory mandate to regulate federal voter registration. The EAC argues that this Court's order unduly constrains its discretion to determine what is necessary to be included on the state-specific instructions. The harm asserted by the intervenors concerns their ability to conduct successful voter registration drives. In response, the states argue that the intervenors' claim that eligible voters will be prevented from registering to vote unless a stay is granted is purely theoretical. The states also maintain that the extra effort necessary to conduct voter registration drives according to the language ordered by this Court does not rise to the level of irreparable harm.

To obtain a stay pending an appeal, the EAC and intervenors must demonstrate irreparable harm, which is an injury that is "certain, great, actual, and not theoretical," and not "merely serious or substantial."[15] They also must show that the harm is imminent.[16] The key word in considering irreparable harm is *irreparable*, which means that mere harm—even if substantial—in terms of money, time, and energy that would be expended is not enough.[17] In

---

[15] *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).

[16] *Id.*

[17] *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

short, "[i]rreparable harm, as the name suggests, is harm that cannot be undone."[18] In other words, easily reversed harms cannot be considered irreparable.[19]

Here, there is no persuasive argument that the mandated action cannot be undone if this Court's order is reversed on appeal. For example, if the order is reversed, the EAC would be free to remove the ordered language from the state-specific instructions. The hardship envisioned by the EAC—its diminished role in regulating voter registration—would be proven true only if the appellate court reversed. That is, the EAC's envisioned hardship regarding its role in regulating voter registration simply does not exist unless the appellate court finds that its role, vis-a-vis the states, is significantly different than this Court has found, and thus reverses this Court. In that event, the EAC's role would be restored as soon as an appellate decision is issued. Further, any alleged harm done to voter registration drives would be cured on reversal by allowing those registering with the federal form to do so without providing proof of citizenship. While the Court does not dispute that some harm to the EAC and voter registration drives could occur, it believes that any such harm would prove to be temporary and reversible if this Court's order is overturned on appeal. Therefore, the EAC and the intervenors have not carried their burden of showing irreparable harm.

**B. Harm to the states**

The states list three distinct injuries that they would suffer if a stay is issued. According to the states, a stay would 1) prevent the states from enforcing their statutes requiring proof of citizenship, 2) deprive the states of their constitutional right to establish and enforce voter

---

[18] *Salt Lake Tribune Publ'g Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1105 (10th Cir. 2003).

[19] *Id.*

qualifications, and 3) force the states to implement an unduly burdensome bifurcated voter registration system.

On the other hand, the EAC and the intervenors argue that the risk of harm to the states is comparatively small. The EAC, based on its findings, asserts that the number of unlawful registrants by noncitizens is infinitesimally small. The EAC also points out that any harm resulting from the states' need to implement a bifurcated voter registration system is attributable to their own choices or requirements of state law.

Because the EAC and the intervenors will not be irreparably harmed by a denial of a motion to stay pending appeal, the Court finds that any harm that they may suffer does not outweigh the potential harm to the states if a stay is granted. For the states, the primary harm is not being able to fully enforce their voter registration laws as enacted by the residents of Arizona and elected representatives of Kansas. The harm arising from an injunction against the implementation of a state's duly enacted law is a significant harm. Any harm that may be suffered by the EAC or intervenors in terms of voter registration drives must be balanced against potential harm to the states. In this case, any potential harm to the EAC and intervenors does not outweigh the harm to the states.

**C. Public interest**

The next factor asks for a determination of where the public interest lies. The EAC and intervenors argue that the public interest is best served by a stay to avoid the possibility of voter confusion and disenfranchisement. Specifically, the EAC argues that a stay would serve two purposes of the National Voting Rights Act because it would allow more eligible citizens to register to vote and help voter registration drives. The states, on the other hand, contend that a stay is not in the public interest because the public is interested in fair elections free from fraud.

Further, the states argue that voter confusion is more likely if a stay is granted because they will be forced to implement a system in which some voters may only be eligible to vote in federal elections and other voters may be eligible to vote in all elections.

Public interest is best expressed through laws enacted by the public's elected representatives. The people of Arizona and the representatives of Kansas have decided that the public interest of their residents is in preventing voter fraud and protecting public confidence in the integrity of their elections. The Court acknowledges that there is public interest in increasing voter registration. But the intervenors have not shown facts in the record to support the idea that any eligible citizen has been or will be denied the right to vote as a result of the states' laws requiring proof of citizenship. They have discussed incomplete voter registrations due to the failure to provide such proof, but there is no evidence, only speculation, that those voters are unable to provide such proof. All the Court knows, from the evidence in the record, is that they have not—it hasn't been shown that they cannot.

Thus, the inability to register voters is only theoretical. As a result, any claim that the public interest is best served by a stay is likewise theoretical. Conversely, the interest of the states in enforcing its enacted laws is fairly significant. Therefore, the Court finds that the public interest lies with the states, and, in any event, to the extent that there is public interest in voter registration drives, it does not rise to the degree necessary to warrant a stay in this case.

**D. Likelihood of success**

All parties agree that the relaxed standard of considering the likelihood of success only comes into play if the three other factors tip decidedly in favor of a stay. The Court has found that those moving for a stay have not shown irreparable harm. Further, neither of the other two harm factors tip decidedly in the moving parties' favor. As a result, it is not necessary to consider

whether the motions raise questions going to the merits so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.[20]

The EAC acknowledges that the Court has considered all of the arguments raised in its motion to stay. The intervenors' arguments for a showing of a likelihood of success on appeal are the same as those previously raised with this Court. This Court's order closely tracked the directives of and demonstrated compliance with *Arizona v. Inter Tribal Council of Arizona, Inc.*[21] Therefore, the Court is not convinced that the EAC and the intervenors have demonstrated a strong likelihood of success on appeal.

### E. Conclusion

As the moving parties, the EAC and the intervenors have not shown irreparable harm to themselves, that their harm outweighs the harm to the states, or that the public interest is best served by a stay pending appeal. Nor have the moving parties made a strong showing of the likelihood of success on appeal. As a result, the moving parties have not carried their burden of showing that the circumstances justify a stay of this Court's March 19, 2014, order. The motions for a stay are denied.

Because there is no stay issued from this Court, the last directive from this Court to the EAC ordering the addition of the requested language to the state-specific instructions shall be carried out forthwith without further delay. In light of this order, the states' Motion to Compel (Doc. 187) is moot as unnecessary.

---

[20] *See F.T.C.*, 345 F.3d at 852-53.

[21] *Arizona v. Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247 (2013).

**IT IS THEREFORE ORDERED** that the Motions for Stay Pending Appeal (Docs. 161, 163, 164, 165, 166) are hereby **DENIED**. The Motion to Compel (Doc. 187) is **DENIED** as moot.

**IT IS SO ORDERED**.

Dated this 7th day of May, 2014.

                                      ERIC F. MELGREN
                                      UNITED STATES DISTRICT JUDGE